NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0385n.06

No. 10-4505

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 09, 2012*

LEONARD GREEN, Clerk

LISA SPANGLER,                                    )
                                                 )    ON APPEAL FROM THE
     Plaintiff-Appellant,                         )    UNITED STATES DISTRICT
                                                 )    C O U R T   F O R   T H E
v.                                               )    NORTHERN DISTRICT OF
                                                 )    OHIO
LUCAS COUNTY, OHIO,                              )
                                                 )
     Defendant-Appellee.                          )    O P I N I O N


BEFORE:    Cole and McKeague, Circuit Judges, and Zatkoff, District Judge.[*]

**Per Curiam.** In 2005, Lisa Spangler began working as a clerk in the Electronic Monitoring Department for the Lucas County, Ohio ("County") court. As a clerk in the Electronic Monitoring Department, Spangler was periodically assigned to be "on-call" from 4:30 p.m. until 8:30 a.m. While "on-call," Spangler was responsible for monitoring the location of convicted felons subject to the County's electric monitoring system. If an alarm sounded, Spangler was responsible for either locating the felon or communicating the situation to a court security officer.

On February 23, 2006, Spangler was on-call after her shift ended at 4:30 p.m. On her way home, she picked up a twelve-pack because she had a "bad day." R. 51-4, Spangler Dep. at 78. Once home, Spangler's bad day quickly turned worse: after drinking three beers in ninety minutes, she fought with her daughter and called the police for assistance. The police ultimately arrested Spangler

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

for domestic violence and held her in jail overnight. While in jail, Spangler "realized . . . that [she] had a great responsibility to [her] job as [she] was on-call." *Id.* at 83-84. Spangler used her phone-call to call her daughter's father, Pat McDougall. *Id.* at 84. Spangler asked McDougall to "retrieve the work folder and call Mark Lair," one of her supervisors, to notify him that she was incarcerated. *Id.* Spangler estimates that Lair received McDougall's call shortly before 8 p.m. *Id.* at 85. By alerting Lair that Spangler was incarcerated she resolved the oversight of the beeper because even though only one person is on-call at a time,"there are two [beepers] so at all times two people have one." *Id.* at 85.

Spangler was released from jail the next day, but because of the discharge process and court proceedings, she did not return home until nearly 4:30 p.m. *Id.* at 86-87. Once home, Spangler called work and spoke with Deb Gasser, the unit manager for the Electronic Monitoring Department. *Id.* at 31, 87. Gasser gave Spangler the choice of coming into the office immediately or waiting to deal with the situation until Spangler returned from a planned vacation. *Id.* at 88. Spangler opted to wait until she returned from vacation. *Id.* Shortly thereafter, however, Gasser called back and told Spangler: "Mark [Lair] wants to see you right now in the courthouse, can you come?" *Id.* Spangler agreed, and Gasser told Spangler to bring "your IDs, your keys and the pager." *Id.*

At work, Spangler spoke with Gasser and Lair, her immediate supervisors. *Id.* at 90. Spangler knew that she was "in trouble," *Id.* at 88, but she also knew that Gasser and Lair were supervised by the Judges of the Lucas County Common Pleas Court. *Id.* at 94. Accordingly, any employment decision Gasser and Lair made was subject to the court's review. *See* R. 54-2 (Lair Dep.) at 38-39.

Lair began their talk by saying: "in lieu [sic] of the current situation and your insubordination and everything that's happening recently, I'm recommending termination." R. 54-1. at 91. Lair continued: "I want you to resign. If you don't resign, it's going to get ugly." *Id.* At that point, Spangler "didn't know what to do." *Id.* Lair then told Spangler that if she resigned, "nothing will go in your file, nothing bad will be in there." *Id.* In response, Spangler decided to resign. *Id.* Lair typed up a letter of resignation. *Id.* at 93. Meanwhile, Spangler "got out a phone book and tried to call" her attorney, but because "[i]t was after 5:00 he wasn't there," so Spangler hung up the phone and went back into Lair's office. *Id.* Spangler then signed her resignation letter. *Id.* at 94.

On October 13, 2007, Spangler sued the County for constructive discharge and violating her procedural due process rights in violation of 42 U.S.C. § 1983. The district court granted the County's motion for summary judgment in a thorough and well-reasoned opinion. Spangler timely appealed. On appeal, Spangler argues the district court erred in granting the County summary judgment. Appellant Br. at 10. In addition, Spangler seeks leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(c)(1)(C) in light of her "possible error" in filing suit against the wrong defendant. *Id.* at 27.

We review a district court's grant of summary judgment de novo. *Bell v. United States*, 355 F.3d 387, 391 (6th Cir. 2004). After careful review of the record and the applicable law, we share the district court's conclusion that Spangler "has fallen short of showing that her resignation was involuntary, for several reasons." *Spangler v. Lucas Cnty. Bd. Of Comm'rs*, No. 3:07 CV 3146, 2010 WL 4181451, at \*3 (W.D. Ohio Oct. 19, 2010). To begin, we note that employee resignations are presumed to be voluntary. *Rhoads v. Bd. of Educ.*, 103 F. App'x 888, 894 (6th Cir. 2004). "A

public employee with a property interest in continued employment is deprived of that interest by her employer if the employer constructively discharges her by forcing her to resign involuntarily." *Id.* An employee can rebut the presumption of voluntariness by demonstrating that "an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if he were in the employee's position." *Id.* at 895. Relevant factors include: (1) whether the employee was given an alternative to resignation; (2) whether the employee understood the nature of the choice she was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether the employee could select the date of resignation. *Id.* The fact that an employee "is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is involuntary, provided that the employer had good cause to believe that there were grounds for termination. On the other hand, an employee resigns involuntarily if, after being given a choice between resignation and termination, she is not granted sufficient time and opportunity to deliberate about the choice." *Id.* (internal citations omitted).

Even after viewing the facts and drawing all reasonable inferences in the light most favorable to Spangler, we find nothing in Spangler's deposition that creates a genuine issue of material fact as to whether her resignation was voluntary. As the district court explained:

> Although Plaintiff points to Lair's comment that 'things could get ugly' in arguing that her resignation was involuntary, her own account of her meeting with Lair indicates that 'she didn't know what to do' and was still unsure about resigning at that point in the meeting. It was Lair's subsequent statement that Plaintiff's personnel record would remain clean that, according to her own account, convinced Plaintiff to resign. It is also significant that Lair never actually threatened Plaintiff with termination. Rather, according to Plaintiff, Lair stated that he would recommend termination to the Common Pleas Judges who possessed the requisite

> authority. Finally, it is significant that Plaintiff was given an opportunity to contact her attorney prior to signing her resignation letter.

*Spangler*, 2010 WL 4181451, at *3. We also note that, when Lair gave Spangler the option to resign rather than subject herself to an investigation, Spangler made a choice that determined the date of her resignation. *Id.* Further, the fact that Lair told Spangler that he was recommending termination but urged her to resign does not make Spangler's resignation involuntary; Spangler's dereliction of duty while incarcerated when she was supposed to be on-call gave Lair good cause to believe there were reasonable grounds for termination. *Rhoads*, 103 F. App'x at 894. Finally, even while both Spangler's deposition and briefing indicate that she resigned "as a result of the defendant's actions," this is not enough to overcome the presumption that she resigned of her own free will. *Id*. For all these reasons, Spangler failed to rebut the presumption that her resignation was voluntary. *Id.* at 895. Because we find that Spangler voluntarily resigned, she was not deprived of a property interest in continued employment with the County. *Id.* at 894. Accordingly, we affirm the district court: both Spangler's constructive discharge and procedural due process claims fail, and her motion to amend her complaint under Federal Rule of Civil Procedure 15(c) is denied as moot.